UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEVEN ROBERTS,                                   Case No. 13 CV 6036
            Plaintiff,                     (FB) (VVP)

  -against-                                        **THIRD AMENDED**
                                                             **COMPLAINT**
THE CITY OF NEW YORK, P.O. AMY
MORIN [SHIELD # 27711], SERGEANT        **JURY DEMAND**
THOMAS GAGLIARDI [SHIELD # 996],
P.O. EUGENE KELLER [SHIELD # 11125],
SERGEANT MICHAEL CIOTA [SHIELD #
4123], P.O. JASON BRODERICK [SHIELD #
27575], P.O. WILSON ALBA [SHIELD #
9921] and JOHN DOE AND JANE DOE #1-4
(the names John and Jane Doe being fictitious,
as the true names are presently unknown),
            Defendants.
------------------------------------------------------------X

Plaintiff, STEVEN ROBERTS, by his attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, P.O. Amy Morin [Shield # 27711], Sergeant Thomas Gagliardi [Shield # 996], P.O. Eugene Keller [Shield # 11125], Sergeant Michael Ciota [Shield # 4123], P.O. Jason Broderick [Shield # 27575], P.O. Wilson Alba [Shield # 9921] and John Doe and Jane Doe #1-4 (collectively, "defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.     This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

## JURISDICTION

2.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First,

        Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

<u>COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS</u>

4. Plaintiff timely made and served a notice of claim upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e.

5. At least thirty days have elapsed since the service of aforesaid notice of claim and adjustment or payment thereof has been neglected or refused.

6. This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) is based.

THE PARTIES

7. Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

8. At all relevant times, defendants P.O. Amy Morin [Shield # 27711], Sergeant Thomas Gagliardi [Shield # 996], P.O. Eugene Keller [Shield # 11125], Sergeant Michael Ciota [Shield # 4123], P.O. Jason Broderick [Shield # 27575], P.O. Wilson Alba [Shield # 9921] and John Doe and Jane Doe #1-4 (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

9. At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

10. At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom,

practice, usage, regulation and/or at the direction of the defendant City of New York.

11. Plaintiff is suing the defendant officers in their individual and official capacities.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. On or about August 2, 2012, at approximately 7:30 p.m., defendant officers, acting in concert, stopped, detained, harassed, assaulted and arrested the plaintiff without cause at or close to the corner of St. Johns Place and Albany Avenue, Brooklyn, New York. Additionally, on or about September 9, 2013, at approximately 9:00 p.m., defendant officers, acting in concert, stopped, detained, harassed, assaulted and arrested the plaintiff at his home which is located at 1288 St. Johns Place, Apt. Basement, Brooklyn, New York.

13. Plaintiff, however, did not commit any offense against the laws of New York City and/or State warranting any of the actions taken by defendant officers.

14. Prior to the August 2, 2012, arrest and assault, plaintiff was engaged in a conversation with one of his friends, Chantee Woods, when defendant officers initially drove past them in a police vehicle.

15. A few moments after driving past the plaintiff and Ms. Woods, defendant officers made an abrupt and illegal U-turn and approached the plaintiff.

16. Upon approaching the plaintiff, defendant officers started questioning the plaintiff with one of them asking the plaintiff "don't I know you?"

17. Even though the plaintiff duly responded to defendant officers, and indicated that defendant officers didn't know him and that he didn't know any of them, defendant officers immediately began to grab the plaintiff and reach into his pockets.

18. As defendant officers were grabbing, turning, pushing and pulling the plaintiff, plaintiff duly requested defendant officers to leave him alone.

19. Instead of leaving the plaintiff alone, defendant officers pounced upon the plaintiff and beat him up.

20. Defendant officers proceeded to empty and/or spray several chemical agents onto plaintiff's facial area.

21. Not contended, defendant officers targeted and repeatedly punched the plaintiff in his periocular area causing the plaintiff to sustain, among other injuries, an orbital fracture and to experience diplopia.

22. Defendant officers also kneed the plaintiff in his stomach area causing the plaintiff to pass blood in his urine, and forcibly dragged the plaintiff down to the ground.

23. Eventually, defendant officers tightly handcuffed the plaintiff with his hands placed behind his back and forcibly pushed the plaintiff into a police vehicle.

24. Plaintiff was rendered dizzy and unconscious as a result of the actions taken against him by defendant officers.

25. Eventually, defendant officers transported plaintiff to the NYPD Housing Bureau's PSA-2 where he was further detained.

26. Initially, defendant officers denied the plaintiff's request for medical treatment and care.

27. After a lengthy period of time following the plaintiff's arrest, and after the plaintiff's condition had worsened, defendant officers were forced to transport the plaintiff to a hospital where he was seen and/or treated for his injuries.

28. Eventually, plaintiff was charged with PL 205.30 'Resisting arrest', in addition to other charge(s), and was subsequently released and/or discharged from custody after a lengthy period of time.

29. Defendant officers seized, disposed of and/or appropriated to themselves several of plaintiff's properties including but not limited to his cell phone charger, flashlight, notebook and nail clipper.

30. At no time did defendant officers issue or provide the plaintiff with a voucher of his properties with the constitutionally-required notice printed on the voucher.

31. Defendant officers did not otherwise notify the plaintiff of the procedures he could follow to reclaim his properties including but not limited to those described above.

32. That the plaintiff was unlawfully deprived of his properties, including but not limited to those described above, as a result.

33. Prior to his second arrest on or about September 9, 2013, plaintiff was eating dinner at his home with one of his friends when defendant officers suddenly and unlawfully entered into the plaintiff's home, arrested the plaintiff and charged the plaintiff with PL 265.01(1) 'Criminal possession of a weapon in the fourth degree'.

34. After falsely arresting the innocent plaintiff, defendant officers tightly handcuffed the plaintiff with his hands placed behind his back.

35. When the plaintiff requested defendant officers to loosen the handcuffs as the handcuffs were too tight and were cutting into his skin causing him to experience pain and numbness, defendant officers refused.

36. Eventually, defendant officers forcibly pushed the plaintiff into their police vehicle and transported the plaintiff to the NYPD-77th Precinct.

37. After detaining the plaintiff at the precinct for a lengthy period of time, defendant officers transported plaintiff to the Central Booking to await arraignment even though the plaintiff did not commit any crime or offense and defendant officers did not find anything illegal from their unlawful and unreasonable search of the plaintiff and his home.

38. While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

39. During this meeting, defendant officers falsely stated to the prosecutors, among other things, that the plaintiff was in possession of a weapon.

40. Based on the false testimony of the defendant officers, the prosecutors initiated criminal action against the plaintiff.

41. That the prosecutors subsequently conducted an independent investigation and concluded that there was no evidence of any crime committed by the plaintiff.

42. As a result, the prosecutors declined to prosecute the plaintiff.

43. Eventually, after detaining the plaintiff for approximately twenty four (24) hours, defendant officers summarily released the plaintiff from his unlawful incarceration.

44. That each and every officer who responded to and/or was present at the location of the assault and arrest described herein had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

45. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

46. As a result of the aforesaid actions by defendant officers, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, loss of property, wages and financial losses, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

47. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 46 of this complaint as though fully set forth herein.

48. The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, unlawful entry, abuse of authority, malicious abuse of process, racial profiling, selective enforcement, failure to intervene, deliberate indifference, cruel and inhuman treatment, cruel and unusual punishment, illegal and unreasonable stop, frisk, search and seizure, unlawful stop, unreasonable detention, pattern of harassment, first amendment retaliation, conspiracy, discrimination, fabrication of evidence, denial of equal protection of the laws, denial of right to a fair trial, denial of due process rights and malicious prosecution.

49. The defendants denied plaintiff treatment needed to remedy his serious medical condition and did so because of their deliberate indifference to plaintiff's need for medical treatment and care.

50. Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

51. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

52. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 51 of this complaint as though fully set forth herein.

53. Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

54. Additionally, defendant City of New York, acting through Kenneth P. Thompson and the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

55. Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting

        individuals who are members of racial/ethnic minority groups such as the plaintiff, who is black, on the pretext that they were involved in narcotics, drugs, guns and/or other illicit activities.

56. Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

57. For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling.

58. In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

59. Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

60. Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

61. In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within

|    |    |
|----|----|
|    | the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators." |
| 62. | Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division." |
| 63. | Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011). |
| 64. | Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs. |
| 65. | Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records. |
| 66. | The New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming |

|     | |
| --- | --- |
|     | pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed." |
| 67. | Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure." |
| 68. | In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman, Sergeant Bobby Hadid and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein. |
| 69. | Upon information and belief, many of the named individual defendants have a lengthy substantiated history of police misconduct, fraud and dishonesty. Further, many of the named individual defendants are named defendants in numerous lawsuits in this district and in the Southern District of New York alleging similar claims as those alleged herein -- many of which lawsuits have been settled by defendant City of New York with said defendant making substantial monetary payments to the plaintiffs in the said lawsuits. |
| 70. | In addition to the named individual defendants, several officers of the NYPD assigned to PSA-2 and 77th Precinct -- as the named individual defendants -- |

10

routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

71. Most of the arrests and charges made by officers assigned to PSA-2 and 77th Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

72. Defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to PSA-2 and 77th Precinct in connection with the unlawful arrests and charges described herein. *See*, *e.g.*, *Lakeith Roberts v. City of New York* (12 CV 3659); *Dayle DeLeon v. City of New York* (12 CV 257); *Ashley Conwell v. City of New York* (12 CV 255); *Michael Booker v. City of New York* (12 CV 253); *Nyesha Croney v. City of New York* (12 CV 251); *Alisha Brewster v. City of New York* (11 CV 4874); *Euday Bowman v. City of New York* (10 CV 3419); *John Pope v. City of New York* (09 CV 3117); *Adrean Coombs v. City of New York* (08 CV 3447); *Donnique Brown v. City of New York* (08 CV 3446); *Keith Price v. City of New York* (07 CV 2846).

73. That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

74. The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in their person and property, to be free from abuse of process, racial profiling, the excessive use of force and the right to due process.

75. By these actions, defendants have deprived plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and

usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: 42 U.S.C. § 1985

76. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 75 of this complaint as though fully set forth herein.

77. In an effort to find fault to use against the plaintiff, defendant officers who are white conspired among themselves and conspired with other individuals to deprive plaintiff who is black of his constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to United States Constitution, because of his race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

78. In light of the foregoing therefore, defendant officers engaged in a conspiracy designed to deprive plaintiff of his constitutional and federal rights in violation of 42 U.S.C. § 1985.

79. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore stated.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

80. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 79 of this complaint as though fully set forth herein.

81. By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting him and depriving him of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) &

        Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

82. In addition, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

83. Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

84. Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

FIFTH CAUSE OF ACTION: ASSAULT AND BATTERY

85. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 84 of this complaint as though fully set forth herein.

86. The conduct of defendant officers, as described herein, amounted to assault and battery.

87. By reason of and as a consequence of the assault, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to reputation.

88. Upon information and belief, defendant City of New York had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City of New York failed to take any appropriate actions to assure plaintiff's safety and security and failed to protect and/or safeguard plaintiff's interests.

89. That defendant City of New York's failure to assure plaintiff's safety and security was a proximate cause of plaintiff's injuries.

SIXTH CAUSE OF ACTION: OTHER NEW YORK TORTS

90. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 89 of this complaint as though fully set forth herein.

91. The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, unlawful stop and frisk, unreasonable search and seizure, unreasonable detention, negligence, defamation, conspiracy, special injury, loss of consortium, harassment, tortuous interference, abuse of power, fraud, trespass, malicious abuse of process and malicious prosecution.

92. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTH CAUSE OF ACTION: NEGLIGENT & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 92 of this complaint as though fully set forth herein.

94. The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to plaintiff.

95. Plaintiff's emotional distress has damaged his personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the assault, detention and imprisonment by defendants.

96. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

EIGHTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES

97. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 96 of this complaint as though fully set forth herein.

98. Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

99. Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiff or to those in a like situation would probably result from such conduct described herein.

100. Upon information and belief, defendant City of New York, knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

101. Upon information and belief, defendant City of New York's negligence in hiring and retaining the defendants proximately caused plaintiff's injuries.

102. Upon information and belief, because of defendant City of New York's negligent hiring and retention of defendant officers, plaintiff incurred and sustained significant and lasting injuries.

WHEREFORE, plaintiff respectfully prays judgment as follows:

    a. For compensatory damages against all defendants in an amount to be proven at trial;

    b. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

    c. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

    d. For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
       October 15, 2014

UGO UZOH, P.C.

/s/

By:     Ugochukwu Uzoh (UU-9076)
         Attorney for the Plaintiff
         304 Livingston Street, Suite 2R
         Brooklyn, NY 11217
         Tel. No: (718) 874-6045
         Fax No: (718) 576-2685
         Email: u.ugochukwu@yahoo.com